UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00043-GNS

STATE AUTO MUTUAL
INSURANCE COMPANY,                                                                         PLAINTIFF/
COUNTERCLAIM DEFENDANT

v.

BARKLEY HANCOCK                                                                              DEFENDANT/
THIRD-PARTY PLAINTIFF

v.

JESSIE INSURANCE, LLC, and
SCOTT JESSIE                                                                          THIRD-PARTY DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant/Third-Party Plaintiff's Motion to Dismiss (DN 24)[1] and Plaintiff/Third-Party Defendant's Motion for Leave to File Sur-Reply. (DN 30). For the reasons that follow, the motions are **GRANTED**.

### I.     BACKGROUND

#### A.     Statement of Facts

On June 20, 2018, Gary Melson ("Melson') was driving a 2012 Dodge Ram owned by Defendant/Third-Party Plaintiff Barkley Hancock ("Hancock"). (Pl.'s Compl. ¶ 7, DN 1). The vehicle was pulling a trailer loaded with bales of straw when an unsecured bale fell from the trailer

---

[1] Hancock styles the present motion as one to "remand" or "remove" this case to state court or, alternatively, to dismiss the case. (Def.'s Mem. Supp. Mot. Dismiss 1, DN 24-1). This Court, however, has no power to *remand* this declaratory action because there is no underlying state court action. 18 U.S.C. § 1447(c). This Court cannot send these claims *back* to state court when the claims did not originate there in the first place. *See, e.g., Gregory v. Teague*, No. 1:14-CV-00015-GNS, 2015 WL 1401321, at *2 (W.D. Ky. Mar. 25, 2015) ("The Court could not find any case law for the proposition that a court may remand an action to a state court in which it never originated."). As such, the Court will only address the merits of the motion to dismiss.

1

and into the road. (Pl.'s Compl. ¶ 11; Third-Party Pl.'s Compl. ¶¶ 12-14, DN 6). Tommy Corbin ("Corbin"), a Glasgow, Kentucky police officer, was driving along the road when the bale fell, but it is contested whether Corbin's vehicle actually struck the bale of straw. (Pl.'s Compl. ¶ 11; Third-Party Pl.'s Compl. ¶¶ 14-17). Regardless, Corbin subsequently claimed to have suffered a medical condition related to the incident. (Pl.'s Compl. ¶ 12; Third-Party Pl.'s Compl. ¶ 18). Theresa Gad ("Gad"), an employee of Plaintiff/Counterclaim Defendant State Auto Mutual Insurance Company ("State Auto"), was involved in the adjustment of Corbin's claim and stated by declaration that she "gained personal knowledge that the claimant in the underlying accident has alleged he may have suffered a heart attack as a result of the underlying accident." (Gad Decl. Ex. 1, DN 25-1). On September 5, 2018, Kentucky Farm Bureau Mutual Insurance Company sent a subrogation letter to Hancock seeking $1,508 in damages related to this incident. (Def.'s Mot. Dismiss 7-8; Def.'s Mot. Dismiss Ex. 1, DN 24-2).

Hancock, the owner of the vehicle driven by Melson, has a farm automobile insurance policy ("the Policy") from State Auto. (Pl.'s Compl. Ex. 1, at 17, DN 1-2). Hancock obtained the Policy through Joe Sexton and from Third-Party Defendants Scott Jessie and Jessie Insurance, LLC (collectively, "Jessie Insurance") in their capacities as agents for State Auto. (Third-Party Pl.'s Compl. ¶ 9).

B. **Procedural History**

On April 4, 2019, State Auto initiated the present action requesting a declaratory judgment that the trailer Melson was pulling behind Hancock's truck is not covered under the Policy and relieving it of its duty to defend or indemnify Hancock. (Pl.'s Compl. ¶ 18-25). On April 29, 2019, Hancock filed a counterclaim alleging that State Auto violated the Unfair Claims Settlement Practices Act pursuant to Kentucky Revised Statute § 304.12-230. (Def.'s Answer & Countercl.

2

7-8, DN 5). On the same day, Hancock filed a Third-Party Complaint against Jessie Insurance alleging negligence, breach of contract, breach of the relationship of trust and confidence, and negligent misrepresentation. (Third-Party Pl.'s Compl. ¶¶ 23-43). On June 26, 2019, Hancock moved to dismiss this action. (Def.'s Mot. Dismiss, DN 24). State Auto responded, and Hancock replied. (Pl.'s Resp. Def.'s Mot. Dismiss, DN 25; Def.'s Reply Mot. Dismiss, DN 28). Finally, State Auto moved for leave to file a sur-reply. (Pl.'s Mot. Leave File Sur-Reply, DN 30).[2]

## II. DISCUSSION

Under 28 U.S.C. § 1332, federal district courts have subject matter jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and is between "citizens of different States." Hancock argues that both of these elements of diversity jurisdiction are missing because (1) Jessie Insurance should be aligned as a plaintiff with State Auto, thereby defeating complete diversity and (2) to a legal certainty, the amount in controversy does not exceed the requisite $75,000. (Def.'s Mem. Supp. Mot. Dismiss 4, 8). In his reply, Hancock further argues that there is no justiciable case or controversy. (Def.'s Reply Mot. Dismiss 4-5).

As stated clearly in 18 U.S.C. § 1332, the amount in controversy necessary to establish diversity jurisdiction must exceed $75,000. Hancock contends that the amount in controversy does not exceed $75,000 because the only particularized amounts for damages is set out in the

---

[2] Generally speaking, sur-replies are "highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter." *Disselkamp v. Norton Healthcare, Inc.*, No. 3:18-CV-00048-GNS, 2019 WL 3536038, at *14 (W.D. Ky. Aug. 2, 2019) (quoting *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc*., 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012)). Even so, granting leave to file a sur-reply may be appropriate in the district court's discretion when "a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *First Specialty Ins. Corp. v. 633 Partners, Ltd*., 300 F. App'x 777, 788 (11th Cir. 2008) (citation omitted). In the case at bar, Hancock's reply raised two new arguments: "(1) that the Complaint should be dismissed for lacking a case or controversy; and (2) that the third-party defendants are somehow 'necessary and indispensable parties' to the action." (Pl.'s Mot. Leave File Sur-Reply 1). For this reason, State Auto's sur-reply will be allowed.

3

subrogation letter from Kentucky Farm Bureau to Hancock requesting $1,508. (Def.'s Mem. Supp. Mot. Dismiss 7-8; Def.'s Mot. Dismiss Ex. 1). State Auto counters that Hancock "does not demonstrate with any legal certainty the full consequence and extent of damages State Auto might suffer, its potential loss, or the cost of defense." (Pl.'s Resp. Def.'s Mot. Dismiss 10)

The district court should accept the amount in controversy as alleged in the complaint "unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." *Mass. Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416 (6th Cir. 1996) (quoting *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990)). "The party opposing dismissal has the burden of proving subject matter jurisdiction." *Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 627 (6th Cir. 2009) (citation omitted). In a declaratory judgment action, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) (citations omitted). As such, "the amount in controversy is not necessarily the money judgment sought or recovered, but rather the *value of the consequences* which may result from the litigation." *Lodal, Inc. v. Home Ins. Co. of Ill.*, 156 F.3d 1230, 1998 WL 393766, at *2 (6th Cir. 1998) (emphasis added) (citation omitted).

The question then is: what is the potential "value of the consequences" of the present declaratory judgment action? Even though there is a low threshold for establishing the amount in controversy, State Auto has failed to provide any particularized indication of how its damages might exceed $75,000 even though its policy limits are $1 million. (Pl.'s Compl. ¶ 14). As a sister court has noted "because the instant action does not question the validity of the insurance contract in its entirety, the policy coverage limits do not constitute the amount in controversy." *Jordan Ice Co. v. Grange Mut. Cas. Co.*, No. CIV.A. 06-142-DLB, 2006 WL 3497767, at *2 (E.D. Ky. Dec. 4, 2006) (citing *Harmon*, 88 F.3d at 415). Rather, "in disputes involving the applicability of an

insurance policy to a particular occurrence, the amount in controversy is the value of the underlying claim." *Id*. (citing 14B Charles Alan Wright et al., *Federal Practice & Procedure* § 3710 (3d ed. 1998)).

Other than establishing its upper limit of liability, State Auto has provided scant information regarding the value of the consequences of the declaratory judgment action. State Auto has tendered no proof or even alleged the existence of an underlying state court action, a demand letter from Corbin or his representative, or any indication of significant medical bills. In fact, Hancock correctly points out that the only concrete indication of the amount in controversy is the subrogation demand letter from Kentucky Farm Bureau to Hancock seeking reimbursement of $1,508 it apparently paid to or on behalf of Corbin. (Def.'s Mot. Dismiss 7-8; Def.'s Mot. Dismiss Ex. 1).

State Auto counters that it *may* accrue additional costs *if* Corbin suffered a heart attack connected to the hay bale incident. The declaration that State Auto relies on for this point, however, is somewhat cryptic and lacking in detail. The State Auto representative claims only that Corbin "has *alleged he may* have suffered a heart attack as a result of the underlying incident." (Gad Decl. Ex. 1 (emphasis added)). Further, Gad states she "gained personal knowledge" of Corbin's potential claim but does not identify her job title or responsibilities with State Auto, nor does she indicate how she learned of Corbin's potential claim. Conspicuously absent from Gad's declaration is any mention of a demand or involvement of an attorney on Corbin's behalf, or an explanation of the connection between a supposed heart attack and the subject incident which did not even result in any property damage. The notion that State Auto *might possibly* be subject to some future claim is insufficient to establish the requisite amount in controversy. The Complaint notes that Corbin did not report any injury or property damage at the time of the incident. (Pl.'s

Compl. ¶ 12). For that matter, it is unclear if Corbin's vehicle even came in contact with a falling hay bale. Furthermore, there is nothing in the record beyond Gad's vague declaration to indicate that Corbin suffered a heart attack, that his heart attack was the result of the subject incident, or that he has or has threatened to pursue legal action. While this Court accepts what State Auto has pleaded in good faith, the existence of an actual claim meeting the Court's minimum jurisdictional limits appears to be purely hypothetical at this point.

State Auto next argues that this Court should consider the cost of defending Hancock in some future lawsuit when assessing the amount in controversy in this case. (Pl.'s Resp. Def.'s Mot. Dismiss 9). There is some case law to support this proposition, but this argument is likewise highly speculative. In *Owners Insurance Co. v. Frontier Housing, Inc.*, No. CV 16-40-HRW, 2017 WL 1097187 (E.D. Ky. Mar. 21, 2017), the court addressed a similar situation. The insurance company there sought a declaratory judgment regarding its duties to provide a defense and indemnify its insured under a general liability policy. *Id*. at *1-2. The Court concluded that the calculation of the amount in controversy rightfully included the value of the state court action *and* "the costs it would incur in representing [the insured] in the state court action." *Id*. (citing *Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 784 (E.D. Ky. 2008)).

As in *Frontier Housing*, State Auto here seeks a judgment relieving it of its duty both to indemnify and defend Hancock. Distinct from both *Frontier Housing* and *Safeco Insurance* on which *Frontier Housing* principally relied, however, this analysis is speculative because there currently is *no underlying action* against Hancock that State Auto must defend. In both *Frontier Housing* and *Safeco Insurance*, there was an underlying state court case against the insured that the insurer was otherwise obligated to defend. The jurisdictional amount in those cases was therefore based on the potential damages award and defense costs of claims being actively litigated

6

in state court. In the present case, there is no indication that Corbin has initiated a lawsuit against Hancock for State Auto to defend. Nor, for that matter, is there any indication in the record that such an action by Corbin is imminent.

The cases relied on by State Auto in its sur-reply to demonstrate an immediate, real controversy are readily distinguishable from the case at hand. In *AMCO Insurance Co. v. Westborn Chrysler Jeep Inc.*, No. 17-13007, 2018 WL 3983807 (E.D. Mich. June 29, 2018), the court merely continued to exercise jurisdiction after an underlying state action was dismissed without prejudice where there existed a significant likelihood the underlying case would be re-filed. *Id.* at *4. In both *Ohio Casualty Insurance Co. v. Farmers Bank of Clay, Ky.*, 178 F.2d 570 (6th Cir. 1949), and *Travelers Indemnity Co. v. Dammann & Co.*, No. 04-5699 DRD, 2005 WL 3406374 (D.N.J. Dec. 12, 2005), third parties made claims against the insured for substantial sums of money. *Farmers Bank*, 178 F.2d at 572; *Dammann*, 2005 WL 3406374, at *2. Most notably, the third party in *Dammann* tendered "a 'formal claim . . . for the full and immediate compensation . . . of $5,189,924.'" *Dammann*, 2005 WL 3406374, at *1.

There is nothing in the present case suggesting there is a state court action—or even the threat of such an action—to create a justiciable controversy of "sufficient immediacy and reality." Likewise, distinct from both *Farmers Bank* and *Dammann*, there is no indication that Corbin has made a claim against Hancock beyond the modest sum requested in the subrogation letter. Without a more concrete indication that the present facts will give rise to a formal claim for damages, any ruling by this Court ruling regarding the Policy's coverage of the subject incident would constitute an impermissible advisory opinion. *See Locke v. Brown*, No. 3:18-CV-697-RGJ, 2019 WL 4675390, at *5 (W.D. Ky. Sept. 25, 2019) ("Thus, a declaratory judgment by this Court would be

nothing more than an advisory opinion, which this Court is prohibited from issuing." (citation omitted)).

District courts are without power to grant declaratory relief unless an "actual controversy" exists, as opposed to a mere "abstract question."[3] *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 272-73 (1941). The facts, as alleged, must show "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Hillard v. First Fin. Ins.*, 968 F.2d 1214, 1992 WL 164998, at *2 (6th Cir. 1992) (internal quotation marks omitted) (quoting *Detroit, Toledo & Ironton R. Co. v. Consol. Rail Corp.*, 767 F.2d 274, 279 (6th Cir. 1985)).

There is nothing in the record to indicate that there is a state court action—or even the threat of such an action—to create a case and controversy of sufficient immediacy and reality. Without a concrete controversy, a ruling regarding the Policy coverage or exclusion would constitute an impermissible advisory opinion.

---

[3] Hancock further argues that this Court should rely on *City of Indianapolis v. Chase National Bank*, 314 U.S. 63 (1941), to realign the parties in accordance with their proper side of the dispute. (Def.'s Mem. Supp. Mot. Dismiss 5). For realignment purposes, the Sixth Circuit uses the primary purpose test, under which the "[p]arties must be aligned in accordance with the primary dispute in the controversy, even where a different, legitimate dispute between the parties supports the original alignment." *Evanston Ins. Co. v. Hous. Auth. of Somerset*, 658 F. App'x 799, 802 (6th Cir. 2016). If Jessie Insurance were realigned as a plaintiff with State Auto, complete diversity of citizenship would be destroyed and subject matter jurisdiction lost. Realignment is not warranted in the present case, however, because the interests of State Auto and Jessie Insurance are not aligned. An unfavorable ruling for State Auto would render moot Hancock's claims against Jessie Insurance; conversely, a favorable ruling for State Auto would bolster Hancock's argument that Jessie Insurance negligently procured the Policy. Moreover, the realignment doctrine does not apply to third-party defendants who are not indispensable parties. *See Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 44 F. Supp. 2d 870, 874, 878 (E.D. Mich. 1999) (holding that a realigned third-party defendant could be dismissed from the case to preserve diversity jurisdiction).

## III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendant/Third-Party Plaintiff's Motion to Dismiss (DN 24) is **GRANTED**, and the Complaint is **DISMISSED WITHOUT PREJUDICE**. The Clerk shall strike this matter from the active docket.

2. Plaintiff/Third-Party Defendant's Motion for Leave to File Sur-Reply (DN 30) is **GRANTED**.

Greg N. Stivers, Chief Judge
United States District Court

November 27, 2019

cc: counsel of record